# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF GEORGIA
# ROME DIVISION

United States of America,

v.

Randall Arthur Lee Chumley,

Defendant.

Case No. 4:18-cr-3-MLB-22

_____/

## OPINION & ORDER

Following sentencing, the United States asked the Court to issue a written order explaining its determination that Defendant Randall Chumley's 2016 conviction for rioting in a penal institution does not constitute a crime of violence so as to classify him as a career offender under section 4B1.1(b)(3) of the Sentencing Guidelines. The Court obliges that request.

**I.   Background**

In August 2018, a federal grand jury returned a superseding indictment charging Defendant with two counts of being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g) (Counts 16–17); one count of possessing methamphetamine with intent to distribute,

in violation of 21 U.S.C. § 841 (Count 18); one count of possessing a firearm during a drug trafficking crime, in violation of 18 U.S.C. § 924(c) (Count 19); and one count of possessing an unregistered firearm that failed to comply with the National Firearms Act, in violation of 26 U.S.C. §§ 5861 and 5871 (Count 20). (Dkt. 279.) Prior to his indictment in this case, Defendant Chumley had obtained several prior criminal convictions, including convictions in 2015 and 2016 for rioting in a penal institution in violation of O.C.G.A. § 16-10-56.[1]

In October 2018, Defendant pleaded guilty to Counts 18 and 19. (Dkts. 428; 429.) In the final Presentence Investigation Report ("PSR"), the Probation Officer determined Defendant Chumley was not a career offender under section 4B1.1(b)(3) of the United States Sentencing Guidelines. The Probation Officer reached this determination after concluding his prior convictions for rioting in a penal institution did not constitute crimes of violence under section 4B1.2(a). The government

---

[1] While the United States concedes his 2015 conviction does not qualify as a crime of violence, the Court discusses it as a point of comparison with his 2016 conviction for the same offense.

objected to that conclusion in regarding the 2016 conviction.[2] (Dkt. 1080 at 3.)

At Defendant Chumley's sentencing hearing, the Court agreed with the Probation Officer, overruled the government's objection, and held Defendant Chumley was not a career offender. (Transcript of Proceedings, Dec. 10, 2020.) The Court sentenced Defendant Chumley to 40 months' imprisonment on Count 18 and 120 consecutive months' imprisonment (the mandatory minimum) on Count 19, for a total sentence of 160 months' imprisonment. The United States did not object to the sentence imposed or the manner in which the Court did so, including its refusal to apply the career offender enhancement. (*Id.* at 40, 44.) The Court enters this order at the United States' request.

## II. Legal Standard

The Sentencing Guidelines define the term "crime of violence" as any felony that "has as an element the use, attempted use, or threatened use of physical force against the person of another[.]" U.S.S.G. § 4B1.2. This definition is virtually identical to the definition of "violent felony"

---

[2] The dispute revolves around Defendant's 2016 conviction for riot in a penal institution. (Dkt. 1080-2.)

3

under the Armed Career Criminal Act ("ACCA"). Courts can thus look to opinions applying the ACCA for guidance in considering whether an offense qualifies as a crime of violence under the Sentencing Guidelines. *United States v. Alexander*, 609 F.3d 1250, 1253 (11th Cir. 2010).

To determine whether a prior conviction constitutes a "violent felony" under the ACCA or "a crime of violence" under the career offender guideline, courts use the so-called "categorical approach." *Descamps v. United States*, 570 U.S. 254, 257 (2013). This requires the Court to "compare the elements of the crime of conviction with the elements of the 'generic' version of the listed offense—*i.e.*, the offense as commonly understood." *Mathis v. United States*, 136 S. Ct. 2243, 2247 (2016). Under this approach, courts focus solely on the elements of the crime of conviction, "while ignoring the particular facts of the case." *Id.* at 2248. "Sentencing courts may 'look only to the statutory definitions'—*i.e.*, the elements—of a defendant's prior offenses, and *not* 'to the particular facts underlying those convictions.' " *Descamps*, 570 U.S. at 261 (quoting *Taylor v. United States*, 495 U.S. 575, 600 (1990) (emphasis in original)). A crime of conviction qualifies as a violent felony or crime of violence under the categorical approach only when the statutory definition "has

4

as an element the use, attempted use, or threatened use of physical force against the person of another." U.S.S.G. § 4B1.2. The question for a sentencing court applying the categorical approach is "whether every defendant convicted of that state or federal felony *must have* used, attempted to use, or threatened to use physical force against the person of another *in order to have been convicted*, not whether the particular defendant *actually* used, attempted to use, or threatened to use physical force against the person of another *in that particular case*." *United States v. Burris*, 912 F.3d 386, 392 (6th Cir. 2019) (emphasis in original).

As part of this analysis, courts have come to distinguish between so-called indivisible statutes—that is, a statute that "sets out a single (or 'indivisible') set of elements to define a single crime"—and "divisible" statutes—meaning a statute that "list[s] elements in the alternative, and thereby define[s] multiple crimes." *Mathis*, 136 S. Ct. at 2248. The categorical approach obviously works in a straightforward manner with an undividable statute. There is only way to violate such a statute and the categorical approach looks at whether that one way requires the use or threated use of force. But when a statute is "divisible" the inquiry is more complex. *Id.* at 2249. In that situation, a court applies a "modified

categorical approach." It first determines which set of elements gave rise to the defendant's conviction and then whether those elements satisfy the categorical approach—that is, whether those elements include the use, attempted use, or threatened use of physical force against the person of another. *Descamps*, 570 U.S. at 257 (modified categorical approach examines the generic version of the crime underlying a conviction to determine whether its elements constitute a violent felony). Under this approach, the Court may consult a "restricted set of materials," identified as including the indictment or other charging document and any plea agreement or transcript of the plea colloquy, to determine the specific offense of conviction. *Id.* at 262 (citing *Shepard v. United States*, 544 U.S. 13 (2005)). The Supreme Court has explained that:

> [T]he modified approach merely helps implement the categorical approach when a defendant was convicted of violating a divisible statute. The modified approach thus acts not as an exception, but instead as a tool. It retains the categorical approach's central feature: a focus on the elements, rather than the facts, of a crime. And it preserves the categorial approach's basic method: comparing those elements with the generic offense's.

*Id.* at 263.

## III. Discussion

### A. Determining Whether the Statute is Divisible

"In determining whether a particular statute contains alternative elements or merely alternative means for satisfying the same element, a court should consider: (1) the text of the statute; (2) any state-court decisions interpreting that statute; and (3) where 'state law fails to provide clear answers, … the record of a prior conviction'—but only for the limited purpose of distinguishing between means and elements." *United States v. Brooks*, No. 1:19-cr-92, 2020 WL 5984350, at *3 (E.D. Tenn. Oct. 8, 2020). The Georgia statute provides that "[a]ny person legally confined to any penal institution of this state or of any political subdivision of this state who commits an unlawful act of violence or any other act in a violent or tumultuous manner commits the offense of riot in a penal institution." O.C.G.A. § 16-10-56 (2010). The United States says the repeated use of the word "or" in the second part of the statute makes this a divisible crime. It says a person can commit this crime in multiple ways, including specifically by (1) committing an unlawful act of violence; (2) committing any other act in a violent manner; or (3) committing any other act in a tumultuous manner. (Dkt. 1080 at 6.)

7

The Court disagrees. A statute that merely lists various factual means of satisfying a single element is not divisible, as a jury need not find nor a defendant admit a particular means by which the element was satisfied so long as there is acknowledgment that it was indeed satisfied. *Mathis*, 136 S. Ct. at 2249. In an effort to help lower courts distinguish between an indivisible and a divisible statute, the Supreme Court provided this example:

> To use a hypothetical adapted from two of our prior decisions, suppose a statute requires use of a 'deadly weapon' as an element of a crime and further provides that the use of a 'knife, gun, bat, or similar weapon' would all qualify. Because that kind of list merely specifies diverse means of satisfying a single element of a single crime—or otherwise said, spells out various factual ways of committing some component of the offense—a jury need not find (or a defendant admit) any particular item: A jury could convict even if some jurors 'conclude[d] that the defendant used a knife' while others 'conclude[d] he used a gun,' so long as all agreed that the defendant used a 'deadly weapon.' . . . And . . . a [burglary] statute might . . . itemize the various places that crime could occur as disjunctive factual scenarios rather than separate elements, so that a jury need not make any specific findings (or a defendant admissions) on that score.

*Mathis*, 136 S. Ct. at 2249 (internal citations omitted). The Georgia statute does not define different crimes, it sets forth alternative means of committing the same offense. Just as one could commit the single crime identified by the Supreme Court in its hypothetical with a gun, a bat, or

8

a knife, so too an individual can commit the Georgia offense through "an unlawful act of violence" or "any other act in a violent or tumultuous manner."

A district court in the Eastern District of Tennessee reached the same conclusion in *Brooks,* 2020 WL 5984350 at *4. In doing so, it examined Georgia case law confirming that O.C.G.A. § 16-10-56 is indivisible.[3] It noted, for example, that the Georgia Court of Appeals has said, "the offense of riot in a penal institution may be committed in two ways[.]" *Id.* (citing *Grant v. State*, 572 S.E.2d 38, 43 (Ga. Ct. App. 2002)). In reaching this conclusion, the Georgia court was referring to a single crime with two means of commission. The *Brooks* court also properly noted that the Georgia Court of Appeals in *Strapp v. State*, 756 S.E.2d 333, 337 (Ga. Ct. App. 2014) held:

> the offense of riot in a penal institution has two elements: that the defendant be "legally confined to any penal institution" in Georgia, and that he or she has c,ommitted an "unlawful act

---

[3] While increased penalties are not an indicator of divisibility, it is helpful to note subsection 16-10-56(b) specifies that all violations of subsection (a) are subject to the same minimum and maximum terms of imprisonment without distinguishing between offenses committed by an unlawful act of violence and those committed by an act in a violent or tumultuous manner.

9

of violence or any other act in a violent or tumultuous manner." 746 S.E.2d at 337. Georgia case law makes clear that committing "an unlawful act of violence" or "any other act in a violent or tumultuous manner" are alternate means of committing the same offense. *Brooks*, 2020 WL 5984350 at *5.

### B. Applying the Categorical Approach

Because the statute is indivisible, the Court applies the categorical approach and asks whether every defendant convicted of violating O.C.G.A. § 16-10-56 *must have* used, attempted to use, or threatened to use physical force against the person of another *in order to have been convicted*. The answer is "no." The statute provides that the crime can be committed by acting in a "tumultuous manner." The Georgia Supreme Court has defined "tumultuous" as having the common meaning of "disorderly, turbulent, or uproarious." *Freeman v. State*, 805 S.E.2d 845, 848 (Ga. 2017). The United States recognizes this and concedes unlawful tumultuous behavior is not a crime of violence as it does not necessarily include the use, attempted use, or threated use of physical force. (Dkt. 1080 at 8); *see also Smith v. State*, 842 S.E.2d 305, 312–13 (Ga. Ct. App. 2020) (affirming conviction for rioting in penal institution without actual

or threatened violence when inmates "belligerently refus[ed] to give deputies their playing cards, and then angrily curs[ed] at the deputies when the lock-down was ordered"). Because the prior crime of conviction fails the categorical approach, the Court adopted the PSR's conclusion that Defendant Chumley's 2015 and 2016 convictions did not qualify him as a career offender.

### C.    Applying the Modified Categorical Approach

Even if the Court were to determine O.C.G.A. § 16-10-56 is divisible, the Court would still conclude the specific crimes charged against Defendant Chumley fail the modified categorical approach analysis. As part of this, the Court consults the indictment and plea documents, not "to discover what the defendant actually did," but rather to determine the elements that served as the "basis for the conviction." *Descamps*, 570 U.S. at 268.

The 2015 indictment alleged Defendant Chumley "did unlawfully commit an act in a tumultuous manner." (Dkt. 1080-1 at 13.) The United States thus concedes that conviction fails the modified categorical approach and does not count as a predicate offense for purposes of the career offender designation. (Dkt. 1080 at 8.)

11

The 2016 indictment alleged Defendant Chumley committed the act in a "violent and tumultuous manner" by striking the victim "about the collarbone" and causing swelling to the area around the collarbone. (Dkt. 1080-2). The United States argues that the use of the conjunctive "and" suggests "the basis for [his] conviction was likely an element requiring proof of an act committed in a violent manner." (Dkt. 1080 at 9.) The Court rejects this argument for three reasons. First, the final analysis of the modified categorical approach does not look to whether it is "likely" the conviction included an element requiring proof of a violent act. It requires a determination the conviction ***necessarily required*** proof of use, attempted to use, or threatened to use physical force. "Likely" is not enough. Second, the Court rejects the United States' suggestion that the use of the conjunctive necessarily required Defendant Chumley to admit he committed an act in both a violent and tumultuous manner in order to plead guilty. "Prosecutors can and frequently do . . . charge alternative elements in the conjunctive and prove one or more of them in the disjunctive, which is constitutionally permissible." *United States v. Howard*, 742 F.3d 1334, 1349 n.3 (11th Cir. 2014) (citing *Crain v. United States,* 162 U.S. 625, 636 (1896) ("We perceive no sound reason

why the doing of the prohibited thing in each and all of the prohibited modes may not be charged in one count, so that there may be a verdict of guilty upon proof that the accused had done any one of the things constituting a substantive crime under the statute.")). Indeed, the Eleventh Circuit has recognized that the ability of prosecutors to charge in the conjunctive and prove in the disjunctive poses an impediment to the finding of a crime of violence under the modified categorical approach. *Id.* Third, the United States' reliance on the language in the indictment alleging Defendant Chumley struck someone "about the collarbone" is irrelevant to the analysis. When a court applies the modified categorical, it must "focus on the elements, rather than the facts," of the prior conviction. *Descamps*, 570 U.S. at 261.

While the indictment alleged Defendant Chumley committed the offense in a "violent and tumultuous manner," he could have been convicted (or entered a guilty plea) based only upon tumultuous behavior. The Court thus concludes his 2016 conviction does not satisfy the modified categorical approach.

## IV. Conclusion

For the reasons set forth herein, the Court overrules the United States' objections to the PSR, specifically its contention that Defendant Chumley's 2016 conviction for rioting in a penal institution qualifies him for the career offender enhancement under the Sentencing Guidelines. (Dkt. 1080.)

**SO ORDERED** this 22nd day of December, 2020.

_____
MICHAEL L. BROWN
UNITED STATES DISTRICT JUDGE